# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| ) | |
| **NAGOG REAL ESTATE CONSULTING** ) | |
| **CORP.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil No. 19-cv-11714-DJC** |
| ) | |
| **NAUTILUS INSURANCE CO.,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                    **July 20, 2020**

## I.    Introduction

Plaintiff Nagog Real Estate Consulting Corp. ("Nagog Real Estate") filed this lawsuit against Defendant Nautilus Insurance Company ("Nautilus") seeking a declaratory judgment under its Commercial Lines Policy No. NN836687 (the "Policy") in connection with a civil action brought in Middlesex Superior Court (the "Underlying Suit").  D. 1-1.  Nautilus has moved for summary judgment as to its duty to defend and the Mass. Gen. L. c. 93A ("Chapter 93A") claim against it, D. 19, and Nagog Real Estate has cross-moved as to Nautilus's duty to defend as asserted in its claim against Nautilus and as asserted in Nautilus's first counterclaim.  D. 22.  Nagog Real Estate also seeks to strike Nautilus's motion for summary judgment and supporting documents. D. 29.  For the reasons discussed below, the Court ALLOWS IN PART and DENIES IN PART

Nagog Real Estate's motion to strike, D. 29, DENIES Nagog Real Estate's motion for summary judgment, D. 22, and ALLOWS Nautilus's motion for summary judgment, D. 19.

## II.      Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Material facts are those that carry the potential "to affect the outcome of the suit under the applicable law."  Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).  The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If he does so, the burden shifts to the nonmovant to establish that a genuine material dispute exists."  Harley-Davidson Credit Corp. v. Galvin, 807 F.3d 407, 411 (1st Cir. 2015).  That is, the nonmoving party "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010).  In conducting this inquiry, the Court "constru[es] the record in the light most favorable to the non-movant and resolv[es] all reasonable inferences in that party's favor."  Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008).

## III.     Factual Background and Procedural History

The following facts are drawn from Nagog Real Estate's statement of undisputed material facts, D. 24, Nautilus's statement of undisputed facts, D. 21, each party's response to the same, D. 28; D. 31, and the documents attached thereto.

### A.      The Policy

Nautilus issued the Policy to Hawthorn Homes, LLC, Nagog Homes LLC ("Nagog Homes") and Nagog Real Estate for the policy period of 9/16/2017 – 9/16/2018.  D. 28 ¶ 13; D.

24 ¶ 13; D. 25-3.  The Policy includes several types of coverage, including Building and Personal

Property Coverage and Commercial General Liability Coverage.  D. 25-3 at 5.  The terms of these

types of coverage under the Policy are outlined in general forms, such as the Commercial General

Liability Coverage Form, followed by amendments and endorsements that modify these general

forms.  See D. 25-3 at 5.  The coverage at issue here is the Commercial General Liability Coverage,

which provides for a general aggregate limit of $2 million and an occurrence limit of $1 million.

D. 28 ¶ 14; D. 24 ¶ 14.  The Commercial General Liability Coverage provides:

> [w]e will pay those sums that the insured becomes legally obligated to pay as
> damages because of "bodily injury" or "property damages" to which this insurance
> applies.  We will have the right and duty to defend the insured against any "suit"
> seeking those damages.

D. 25-3 at 61.  The general terms of the Commercial General Liability Coverage include terms of

the Policy including exclusions, D. 25-3 at 61-76, and are followed by several endorsements and

amendments that modify the general terms, D 25-3 at 77-115.  The general terms of the Policy

include an exclusion for employer's liability ("employer's liability exclusion") which provides:

**2. Exclusions**

This insurance does not apply to: . . .

**e.  Employer's Liability**

"Bodily Injury" to:

(1) An "employee" of the insured arising out of and in the course of:

> (a) Employment by the insured; or
> (b) Performing duties related to the conduct of the insured's business;. . . .
> This exclusion applies whether the insured may be liable as an employer or in any
> other capacity and to any obligation to share damages with or repay someone else
> who must pay damages because of the injury.

D. 25-3 at 62.  The general terms of the Commercial General Liability Coverage also include a

"separation of insureds" clause,[1] which provides:

> [e]xcept with respect to the Limit of the Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:
>
>> a.  As if each Named Insured were the only Named Insured;
>> b.  Separately to each insured against whom claim is made or "suit" is brought.

D. 25-3 at 73.

The Policy includes Endorsement L205 (the "L205 Endorsement").  D. 25 at 84.  The L205

Endorsement states in capital letters that it "CHANGES THE POLICY" and further reiterates that

the endorsement "modifies the insurance policy" by replacing the employer's liability exclusion

in the general terms with the following terms of the exclusion:

> e. **Injury to Employees, Contractors, Volunteers and Other Workers**
>
> "Bodily Injury" to:
>
>  (1)  "Employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees" casual workers, seasonal workers, contractors, subcontractors, or independent contractor of any insured; or
> (2)   Any insured's contractors', subcontractors' or independent contractors' "employees", "leased workers", "temporary workers", "volunteer workers", statutory "employees", casual workers, seasonal workers, contractors, subcontractors or independent contractors
> arising out of and in the course of:
>> (a) Employment by any insured; or
>> (b) Directly or indirectly performing duties related to the conduct of any insured business; . . . .
>
> This exclusion applies:
> (1) Regardless of where the:
>> (a) Services are performed; or
>> (b) "Bodily injury" occurs; and
> (2) Whether any insured may be liable as an employer or in any other capacity; and

---

[1] Similar clauses are also known as "severability of insured" clauses.

> (3) To any obligation to share damages with or repay someone else who must
> pay damages because of the injury.

D. 25 at 84.

**B.**      **The Underlying Suit**

On October 4, 2018, Richard Desjean ("Desjean") filed the Underlying Suit in Middlesex Superior Court against Nagog Homes and Jay Pramberg.  D. 25-1.  On April 23, 2019, Desjean filed an amended complaint adding Nagog Real Estate as a defendant in the Underlying Suit.  D. 25-2.  Desjean asserts claims in the Underlying Suit for negligence, negligent supervision, negligent hiring and a violation of Mass. Gen. L. c. 93A against Nagog Real Estate and Nagog Homes,  D. 25-2 ¶¶ 14-39, 48-65, in connection with an incident where Desjean was injured while working on a construction project at a property allegedly owned by Nagog Homes.  D. 25-2 ¶¶ 6, 11, 12.

The Underlying Suit includes the following allegations:  Nagog Homes was the owner of Lot 7, Hutchinson Road, Acton, Massachusetts and Nagog Real Estate was the general contractor for a residential project on this site.  D. 28 ¶¶ 3, 5; D. 24 ¶¶ 3, 5; D. 25-2 ¶¶ 5-6.   Pramberg "as an employee of Nagog Real Estate and authorized agent of Nagog Homes" obtained a building permit for Lot 7.  D. 25-2 ¶ 7.  J.H. Pettingwell, Inc. ("Pettingwell") submitted a proposal to Nagog Homes to perform framing work, which was "accepted by Pramberg as an employee of Nagog Real Estate and/or as an agent of Nagog Homes."  D. 25-2 ¶ 8.  On or around October 7, 2017, Desjean, an employee of Pettingwell, was working at the construction project when he fell through a stairwell opening that did not have any stair railings or protective barriers.  D. 25-2 ¶ 11.  "Nagog Real Estate and/or Nagog Homes and/or Pramberg negligently failed to install stair railings or protective barriers on the stairwells of the construction project."   D. 25-2 ¶ 12.

Nagog Real Estate has denied liability in the Underlying Suit.  D. 28 ¶ 12; D. 24 ¶ 12.  On

April 3, 2019 and again on May 8, 2019, Nagog Real Estate demanded that Nautilus defend it in

the Underlying Suit.  D. 28 ¶ 18; D. 24 ¶ 18.  Nautilus has refused to defend Nagog Real Estate,

D. 28 ¶ 19; D. 24 ¶ 19, and Nagog Real Estate brings this suit seeking a declaration that Nautilus

has a duty to defend and indemnify it in the Underlying Suit.  D. 28 ¶ 21; D. 24 ¶ 21.

## IV.   Discussion

### A.   Motion to Strike

Before turning to the cross motions for summary judgment, the Court addresses Nagog

Real Estate's motion to strike.  Nagog Real Estate urges this Court to strike or disregard and deny

Nautilus's motion for summary judgment, memorandum of law and statement of undisputed facts

because, Nagog Real Estate argues, these filings impermissibly rely upon extrinsic evidence, D.

29 at 1-2.  An insurer "may not use extrinsic evidence to avoid its duty to defend by challenging

the allegations in the complaint [in the Underlying Suit]."  See Biochemics Inc. v. Axis

Reinsurance Co., 963 F. Supp. 2d 64, 70 (D. Mass. 2013).  An insurer *may* use extrinsic evidence

to deny a duty to defend based on facts irrelevant to the merits of the underlying litigation, such as

whether the claim was first made during the policy period, whether the insured party reported the

claim to the insurer as required by the policy, or whether the underlying wrongful acts were related

to prior wrongful acts."  Id. (emphasis in original).  This Court has previously denied discovery on

this issue and held that the limited instances in which such discovery would be warranted (i.e., the

latter category referenced above) were not implicated in this case.  D. 17.  As such, the Court has

not considered extrinsic evidence in its resolution of Nagog's duty to defend.  Accordingly, the

motion to strike, D. 29, is ALLOWED to the extent it requests that this Court disregard such

extrinsic evidence and is DENIED to the extent it requests other relief.

### B.      Duty to Defend

It is well-settled Massachusetts law that an insurer's duty to defend is broader than its duty to indemnify.  See Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009). To determine whether the insurer has a duty to defend, the Court must compare the facts alleged in the Underlying Suit against the Policy.  See Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 15 (1st Cir. 2002).  "[I]f the allegations of the [underlying] complaint are reasonably susceptible of an interpretation that they state a claim covered by the terms of the insurance policy," then the insurer has a duty to defend the insured.  HDH Corp. v. Atl. Charter Ins. Co., 425 Mass. 433, 436 (1997) (citing Liberty Mut. Ins. Co. v. SCA Servs., Inc., 412 Mass. 330, 331-32 (1992)).  The "allegations in the underlying complaint need only show 'a possibility that the liability claim falls within the insurance coverage' rather than that the allegations 'specifically and unequivocally make out a claim within the coverage.'"  Friel Luxury Home Constr., Inc. v. ProBuilders Specialty Ins. Co. RRG, No. 09-CV-11036-DPW, 2009 WL 5227893, at *2 (D. Mass. Dec. 22, 2009) (quoting Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 394 (2003)).

Initially, the insured bears the burden of showing that the allegations in the Underlying Suit fit within the covered risks in the policy.  Essex, 562 F.3d at 404.  Once satisfied, the burden shifts to the insurer to demonstrate that one or more of the exclusionary provisions applies and there is no duty to defend.  Id.  Courts must abide by the "straightforward meaning of policy language" when possible, Lexington Ins. Co. v. Gen. Accident Ins. Co. of Am., 338 F.3d 42, 48 (1st Cir. 2003), but "[t]o the extent (if at all) that any ambiguity permeates a policy exclusion, it must be construed strictly against the insurer."  B & T Masonry Constr. Co. v. Pub. Serv. Mut. Ins. Co., 382 F.3d 36, 39 (1st Cir. 2004).

      *1.*    *As an Initial Matter, the Allegations of the Underlying Suit Are Reasonably Susceptible to an Interpretation that They State a Claim for Coverage by the Policy*

The Policy provides that Nautilus "will have the right and duty to defend the insured against any 'suit'" seeking damages for bodily injury under the Policy.  D. 25-3 at 61.  In the Underlying Suit, Desjean alleges negligence causing bodily injury and thus would appear to be covered under the Policy.  D. 25-2.  Nautilus does not appear to dispute that the allegations in the Underlying Suit fit within the covered risks in the Policy.  Rather, Nautilus asserts that the L205 Endorsement precludes coverage in this instance.  D. 20 at 7.  As the insurer bears the burden to show that an exclusionary provision applies, <u>Essex</u>, 562 F.3d at 404, Nautilus asserts several grounds for the applicability of the L205 Endorsement, D. 20 at 6-21.

      *1.*    *The L205 Endorsement Precludes Coverage*

The L205 endorsement states in capital letters at the top that it "CHANGES THE POLICY" and instructs the reader to read it carefully.  D. 25-3 at 84.  The parties agree that the L205 Endorsement is the applicable employee injury exclusion as it modifies the Commercial General Liability Policy's general terms, D. 20 at 5; D. 31 at 14-15; D. 23 at 7-8, and Nautilus raises two arguments for its applicability in this instance.  D. 20 at 7-20.

      a)    <u>The Underlying Suit Alleges a Possibility that Desjean was not Employed by Nagog Real Estate</u>

First, Nautilus contends that there is no coverage because the L205 Endorsement provides that the insurance does not apply to injuries of subcontractors.  D. 20 at 18 (citing D. 25-3 at 84).  Nautilus argues that the amended complaint alleges that Desjean's employer, Pettingwell, submitted a proposal to Nagog Homes, but Nagog Real Estate was the general contractor on the

project and, therefore, Desjean was actually the agent or employee of Nagog Real Estate.[2]  D. 20

at 18.  The Underlying Suit, however, alleges that Pettingwell submitted a proposal to Nagog

Homes and the proposal "was accepted by Pramberg as an employee of Nagog Real Estate and/or

as an agent of Nagog Homes."  D. 25-2 ¶ 8.  The words "and/or" signal that, as alleged, Pramberg

accepted Pettingwell (and thereby Desjean) as an employee of either Nagog Homes or Nagog Real

Estate or both.   As such, the complaint alleges the possibility that Desjean's employment

relationship was with Nagog Homes alone and not the plaintiff here, Nagog Real Estate.  Because

"[i]n Massachusetts, an insurer's duty to defend arises when the facts—in the complaint and known

to the insurer—generally demonstrate a possibility that the liability claim falls within the scope of

the insurance policy," the complaint need not allege with surety that the claim falls within the

scope of the policy.  Sterngold Dental, LLC v. HDI Global Ins. Co., 929 F.3d 1, 6 (1st Cir. 2019).

Here, Desjean has alleged the possibility that he was employed by Nagog Homes and not Nagog

Real Estate and, as such, Nautilus's argument in this regard fails.

b)   The Separation of Insureds Provision

Second, Nautilus argues that the L205 Endorsement precludes coverage even if Desjean

was employed only by Nagog Homes because the exclusion applies to claims brought by an

employee of "any insured" and Nagog Homes is also an insured party under the Policy.  D. 20 at

7.  The L205 Endorsement bars coverage to employees, contractors, volunteers or other workers

of "any of the insured" and, therefore, bars coverage even if Desjean was employed only by Nagog

Homes.  D. 25-3 at 84 (providing that the insurance does not apply to "[i]njury to [e]mployees,

---

[2] Nautilus also asserts that the circumstances of the case show that Desjean was an employee of
Nagog Real Estate and, therefore, the exclusion applies.  To the extent this argument relies upon
extrinsic evidence, this argument is misplaced.  As this Court explained above and previously held
D. 17, reliance upon extrinsic evidence for this position is inappropriate here for determining the
duty to defend, see Biochemics Inc., 963 F. Supp. 2d at 70.

[c]ontractors, [v]olunteers and [o]ther [w]orkers" of "any insured"). Nagog Real Estate responds that the separation of insured provision of the Policy defeats any argument that "any insured" bars coverage in this instance. D. 32 at 5-7.

The separation of insured provision provides that the insurance applies "[a]s if each Named Insured were the only Named Insured; and . . . [s]eparately to each insured against whom claim is made or suit is brought." D. 25-3 at 73. Nagog Real Estate and Nautilus both cite to several cases out of other circuits as persuasive authority. D. 32 at 8-11 (citing cases from the Ninth, Tenth and Eleventh circuits); D. 20 at 17 (citing district court cases from Texas, New York, Hawaii, Illinois, New Jersey and Idaho). Although this Court recognizes that other courts applying the laws of different states have grappled with the applicability of separation of insured provisions like the one at issue here to different results,[3] this Court ultimately must apply Massachusetts law in this case. Under Massachusetts law, a separation of insured clause "requires that each insured be treated as having a separate insurance policy." Nautilus Ins. Co. v. Harvard Terrace LLC, 17-CV-10068-IT, 2018 WL 5309797, at *11 (D. Mass. Aug. 8, 2018).

In Worcester Mut. Ins. Co. v. Marnell, 398 Mass. 240 (1986), the Supreme Judicial Court interpreted a similar separation of insurance clause in a homeowner's policy to create a separate insurance policy for each insured so that the term "insured . . . refers only to the person claiming coverage under the policy." Id. at 244. There, the court acknowledged that although its "interpretation of the policy makes the word 'any' in the . . . exclusion superfluous," an alternative reading giving effect to "any" would "render the entire severability of insurance clause

---

[3] Although Nautilus cites to a series of cases enforcing the L205 Endorsement, some of these cases did not address the separation of insured provision and, instead, enforced the L205 Endorsement on other grounds. See e.g., Nautilus Ins. Co. v. S. Vanguard Ins. Co., 899 F. Supp. 2d 538, 546-47 (N.D. Tex. 2012); Certain Underwriters at Lloyd's, London v. G & P Bost. Props, LLC, 2015 WL 1243398, at *2-*3 (D. Mass. Mar. 18, 2015).

meaningless" and opted for the interpretation that gave reasonable meaning to both the relevant exclusion and severability of insurance clause:  that the policy should be read to treat each individual as having a separate insurance policy.  Id. at 245-46.

Marnell addressed the insurer's duty to defend under the Marnells' homeowner's insurance for a claim of negligent supervision of their under-the-age son after he left a party at their home in an intoxicated condition in a vehicle and struck and killed the intestate.  Marnell, 398 Mass. at 241.  The insurer there argued that they had no duty to defend because the motor vehicle exclusion precluded coverage when "bodily injuries for which coverage is sought arose out of the 'use . . . of . . . a motor vehicle owned or operated by . . . any insured'" and the Marnells' son was any insured under the policy.  Id. at 242-43 (emphasis and alteration in original).  The court agreed that "without the severability provision a literal reading of the motor vehicle exclusion by itself preclude[d] the Marnells from coverage under the policy because Michael Marnell, an insured owned and operated the motor vehicle involved in the fatal accident" but nonetheless held that the severability of insurance clause made coverage available to the Marnells.  See id. at 244.

Massachusetts courts, however, do not apply Marnell's approach to separation of insured provisions universally.  Rather, the Massachusetts Appeals Court has subsequently explained the result in Marnell to have "turned on the allocation of risks between homeowner's coverage and automobile liability insurance," Hingham Mut. Fire Ins. Co. v. Smith, 69 Mass. App. Ct. 1, 8 (2007), and has declined to apply Marnell when the policies are materially different or when the allocation of risk does not favor application of Marnell,  see id.; First Specialty Ins. Co. v. Pilgrim Ins. Co., 83 Mass. App. Ct. 812, 818-19 (2013); Phoenix Baystate Constr., Co. v. First Fin. Ins. Co., 97 Mass. App. Ct. 1118, 2020 WL 2516670, at *3-4 (2020) (summarizing the rationale in Marnell as depending on the allocation of the risk in that policy).  Nautilus argues that the Policy

is distinguishable from that at issue in <u>Marnell</u> and subsequent cases have declined to apply to principals in <u>Marnell</u> broadly, D. 20 at 13, while Nagog Real Estate asserts that this Court should follow that of <u>Marnell</u> and hold that the separation of insured provision does not preclude coverage in this instance, D. 23 at 8-15.

Another session in this Court addressing a provision similar to the one here, recognized that the interplay of the employee injury exclusion and separation of insured provision "implicates a number of canons of insurance policy interpretation." <u>Nautilus Ins. Co.</u>, 2018 WL 5309797, at *13. The Court must construe the exclusionary clauses strictly against the insurer. <u>PTC, Inc. v. Charter Oak Fire Ins. Co.</u>, 123 F. Supp. 3d 206, 211 (D. Mass. 2015). On the other hand, "[a]n interpretation which gives a reasonable meaning to all of the provisions of a contract is to be preferred to one which leaves a part useless or inexplicable." <u>Sherman v. Emp'rs Liab. Assurance Corp.</u>, 343 Mass. 354, 357 (1961).

Here, a literal reading of the L205 Endorsement by itself would preclude coverage. The Underlying Suit alleges that Desjean was an employee of Nagog Homes and/or Nagog Real Estate, both of which are insured under the Policy and the L205 Endorsement bars coverage for injuries of employees of "any insured." L205 Endorsement differs from the employer's liability provision it alters in the general terms in several respects. <u>Compare</u> D. 25-3 at 84 <u>with</u> D. 25-3 at 62. One of the main differences between the L205 Endorsement and the Employers Liability provision in the general terms is that the L205 Endorsement replaces the term "that insured" with "any insured." <u>Compare</u> D. 25-3 at 84 <u>with</u> D. 25-3 at 62. This replacement alters the exclusion so that instead of excluding coverage only for bodily injury to employees of "that insured" seeking coverage, the L205 Endorsement broadens the exclusion to exclude bodily injury to employees of "any insured" under the policy. <u>See</u> <u>Nautilus Ins. Co.</u>, 2018 WL 5309797, at *12 (explaining the distinction

between policies that refer to "any insured" and policies that refer to "that insured"); Phoenix Baystate Constr., Co., 2020 WL 2516670, at *3 (distinguishing between "any insured" and "the insured"); see also Aquino v. United Prop. & Casualty Co., 483 Mass. 820, 827 (2020) (recognizing that "[t]he distinction in the use of the words 'an insured' and 'the insured,' although subtle on its face, is not without difference"); D. 38 at 2-3.

Reading the separation of insured provision to apply to the L205 Endorsement would require "each insured be treated as having a separate insurance policy," which would negate the change in the L205 Endorsement of the term "that insured" to "any insured." Nautilus Ins. Co., 2018 WL 5309797, at *12. The L205 Endorsement states that it "changes the policy" and "modifies" the policy and further instructs the signatory to "read it carefully." D. 25-3 at 84. The Court is obligated to interpret the Policy in a manner which "best effectuates the main manifested design of the parties," Marnell, 398 Mass. at 245 (quoting King v. Prudential Ins. Co., 359 Mass. 46, 50 (1971)), and it appears that the manifest design of the parties was to broaden the employee injury exclusion to bar coverage of injuries suffered by employees of any insured under the Policy. Accordingly, whereas here the endorsement expressly states it "modifies the insurance policy" by replacing "the insured" with "any insured," compare D. 25-3 at 84 with D. 25-3 at 62, "it should be read to supersede the separation of insureds language in order both to effectuate its plain meaning, and to avoid rendering the clause a nullity." Nautilus Ins. Co. v. Barfield Realty Corp., No. 11 CIV. 7425 JPO, 2012 WL 4889280, at *10 (S.D.N.Y. Oct. 16, 2012).

Indeed, the Massachusetts Appeals Court has declined to apply Marnell when the language in the policy cannot be harmonized by crossing out the word "any." In First Specialty Ins. Co., 83 Mass. App. Ct. at 818, the Massachusetts Appeals Court reviewed a policy similar to that at issue in Marnell except it had an additional provision that stated the automobile exclusion "applies even

if the claims against any insured allege negligence . . . in the supervision[ ] [or] hiring[ ] . . . of others by that insured," if the underlying claim involves an automobile "that is owned or operated by . . . any insured."  Id. (alternation in original).  There, the court explained that the additional provision "clearly envisions that two different insureds" are involved: the insured defendant supervisor or hirer and the "any insured" owner or operator of the vehicle and declined to apply the separation of insured provision.  Id. at 819.  Similarly here, the Policy envisions that the term "that insured" and "any insured" have different meanings, and because applying the separation of insured provision here would reject these different meanings, it was not intended to  be applied to the L205 Endorsement.

Moreover, the policy implications that animated the results in Marnell are not implicated here.  Massachusetts Appeals Courts have subsequently explained the result in Marnell to have "turned on the allocation of risks between homeowner's coverage and automobile liability insurance."  Hingham Mut. Fire Ins. Co., 69 Mass. App. Ct. at  8; see Shamban v. Worcester Ins. Co., 47 Mass. App. Ct. 10, 15 (1999); Phoenix Bay Ins. v. Churchwell, 57 Mass. App. Ct. 612, 615-16 (2003). Here, there appears to be no similar "allocation of the risk argument" and, accordingly, no consideration that courts recognize as animating the results in Marnell.  Id. at 616 (declining to apply the Marnell approach to the separation of insured provision because the allocation of risk did not support the application).

Accordingly, here, the Policy excludes coverage in situations in which an employee, contractor's, subcontractor's employees or workers of any insured brings suit for personal injury during the course of his employment. Accordingly, Nautilus has no duty to defend Nagog Real Estate in the Underlying Suit.

C.      **Nagog's Real Estate's Chapter 93A Claim**

Nautilus also moves for summary judgment on Count III, which asserts a claim under Chapter 93A for violations of Mass. Gen. L. c. 176D.  D. 20 at 20.  Chapter 176D prohibits persons from "engag[ing] in this commonwealth in any trade practice which is defined in this chapter as, or determined pursuant to section six of this chapter to be, an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."  Mass. Gen. L. c. 176D, § 2.  3. Given that this court has ruled that Nautilus has no duty to defend in this instance, the Chapter 93A claims premised on 176D liability also fail.  See Phoenix Ins. Co., 57 Mass. App. Ct. at 616-17 (explaining that a good faith and plausible interpretation of a policy exclusion does not give rise to a Chapter 93A and 176D claim).

V.      **Conclusion**

For the reasons discussed above, the Court ALLOWS IN PART and DENIES IN PART Nagog Real Estate's motion to strike, D. 29, DENIES Nagog Real Estate's motion, D. 22, and ALLOWS Nautilus's motion, D. 19.

        **So Ordered.**

                                                /s/ Denise J. Casper
                                                United States District Judge